## Daviess v. State Bank & Trust Company.

(Decided December 5, 1924.)

### Appeal from Merecr Circuit Court.

1.  Deeds—Judgment of Incompetency Held so Shortly After Deed to Incompetent as to Establish Such Condition when Deed was Made.—Judgment of incompetency day after sale of land to incompetent held so closely connected with transaction in time as to be fairly presumed to speak of her situation on day deed was

made, though only prima facie evidence of such condition at time of and after inquest.

2.  Deeds—Held Properly Set Aside for Incompetency of Grantee.—
Judgment setting aside deed of property, worth no more than $3,500, for $5,000, held correct, in view of grantee's old age and mental and physical condition together with evidence of undue influence by her son ·for his own purposes.

C. E. RANKIN, E. M. HARDIN and W. W. ENSMINGER for appellant.

E. H. GAITHER for appellee

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Mrs. Nancy Lucas is a widow, her husband having died many years ago.  After his death she lived for some years on a small farm in Mercer county to which she had title, and one of her sons lived with her.  That son, however, died in the fall of 1921.  She was at that time 79 years of age, and her other children induced her to sell her little farm, which was put up at public auction, and appellant M. M. Daviess became the purchaser at $5,-100.00.

She then went to live among her children, particularly with one daughter at Harrodsburg, but visited among them all.  In the fall of 1922, nearly a year after she had sold her farm, she became dissatisfied and desired to repurchase the same.  One of her sons, Bohon, had no home of his own, although he had a considerable family, and negotiations were opened up between her and Bohon on one side and Daviess on the other for a resale of the farm to her by Daviess.  Some of her other children having heard of these negotiations called up Daviess and protested against his reselling the farm to their mother, and in substance saying to him that at her age, then past. 80, she was incompetent to make such a deal, and in fact did not know what she wanted.  Two of the children testified that Daviess promised them he would not make a resale to her, which Daviess denies, although admitting he conversed with them on the subject over the telephone.

Then on the 27th of October, 1922, Daviess and Mrs. Lucas closed the deal by which he resold to her the farm at the same price of $5,100.00, although the evidence discloses that since the former sale to Daviess the market

price of real estate in that locality had been materially reduced.

The day after the resale by Daviess to Mrs. Lucas an inquest was held in the circuit court of Mercer county and Mrs. Lucas was adjudged to be incompetent to manage her estate by reason of old age and the infirmities incident thereto. The appellee trust company was at that time appointed her committee, and thereafter brought this equitable action to set aside the conveyance from Daviess to Mrs. Lucas.

The chancellor upon submission set aside the conveyance and placed the parties *in statu quo,* from which judgment this appeal is prosecuted.

The evidence shows Mrs. Lucas to have been 80 years of age the August before this transaction in October; it discloses that she was easily influenced by reason of her age, and that she has no continuity of purpose and her memory very faulty, although there is no evidence that she was actually of unsound mind. All of the evidence as to her mental and physical condition, and bearing upon her capacity to transact business, was given by members of her family except that of Daviess and of a doctor who had waited upon her in a professional way for some five or six years theretofore. While Daviess testifies in substance that her condition appeared to be to him perfectly good, and that he thought she understood exactly what she wanted, and was wholly capable of transacting business, the doctor stated that for two years from the time he gave his evidence, which embraced the time of the transaction involved, her mind had been weak, she was childish in nature, and in feeble condition; and when asked whether she was capable of making trades and protecting herself in a trade, he answered, "No, sir, I don't think so; she was easily influenced either one way or the other," and the witness then expressed the opinion that she was incapable of appreciating or knowing the value of her property, and at another place expressed the opinion that she could not compete with a business man and protect herself in a trade with him.

There is likewise evidence tending to show that her son Bohon had influenced her to repurchase the property in order that he and his family might have a home with her thereon.

Of course the judgment of incompetency entered on the inquest is only *prima facie* evidence of that condition

at that time and subsequent to the inquest; but this judgment was so closely connected in time with the transaction sought to be set aside, that it may be fairly presumed to speak of her situation the day before the entry of that judgment, which was the day the deed was made.

The evidence shows that the property was probably not worth exceeding $3,500.00 on the day she bought it for $5,100.00, and in the light of her age and mental and physical condition, taken in connection with the evidences of undue influence by her son for purposes of his own, the chancellor's judgment was correct. Herzog v. Gipson, 170 Ky. 325.

Judgment affirmed.